In re MASTERCRAFT RECORD PLATING, INC., Longwear Stamper Corporation and Raleigh Records, Inc., Debtors.

Bankruptcy Nos. 80 B 10791 (PBA), 80 B 10999 (PBA) and 80 B 11000 (PBA).

United States Bankruptcy Court,
S.D. New York.

July 15, 1983.

George R. Osborne, New York City, for debtors and debtors-in-possession.

Gadsby & Hannah, New York City, for Keel Mfg., Inc.; Gary A. Woodfield, New York City, of counsel.

Hershcopf & Stevenson, New York City, for the Creditors' Committee; Abraham J. Backenroth, New York City, of counsel.

## DECISION WITH RESPECT TO VARIOUS MOTIONS INVOLVING KEEL MANUFACTURING, INC.

PRUDENCE B. ABRAM, Bankruptcy Judge.

These Chapter 11 cases were filed on May 30 and June 27, 1980. No plan was forthcoming and in late 1981 or early 1982, the U.S. Trustee moved to convert the cases for failure to prosecute. The result was that on April 28, 1982, these debtors filed a consolidated plan of reorganization. Thereafter a hearing was held on the disclosure statement and on June 7, 1982 an order was entered approving the disclosure statement. Votes were solicited but the plan has not yet been confirmed.

One reason that confirmation has not proceeded is that shortly after the disclosure statement was approved Keel Manufacturing, Inc. ("Keel") sought to vacate the order approving the disclosure statement and filed a plan of its own. Keel has since filed a number of motions all aimed at preventing confirmation of what it views as an inadequate plan. The debtors-in-possession have opposed Keel's motions and have countermoved on various issues. The Creditors' Committee has also joined the fray and moved to disallow any claim of Keel and for confirmation of the plan.

■ Although this court shares Keel's belief that the plan is inadequate (although not for the reasons Keel asserts), the court departs from Keel with respect to the disclosure statement. The disclosure statement itself is adequate and was properly approved. The major defect the court finds with the plan is an apparent misclassification of creditors, and a failure to classify stockholders. The plan provides for 3 classes of general unsecured claims—those under $20,000, those over $20,000 and those which are disputed. This last category encompasses according to the disclosure statement, the claims of Bekins Archival Services, Inc. ("Bekins") but also seemingly includes the Keel claim. The over and under $20,000 classes are treated identically. The plan fails to state what treatment is afforded to the disputed claims class.

■ Bankruptcy Code § 1122 deals with the classification of claims for the purposes of the plan. Claims are to be placed in the same class only if the claim is substantially similar to other claims. § 1122(a). A plan may designate a separate class of unsecured claims consisting of every unsecured claim that is less than or reduced to an amount "that the court approves as reasonable and necessary for administrative convenience." § 1122(b). If the under $20,000 class was intended to take advantage of this section it fails the test. The purpose of § 1122(b) is to allow a plan to reduce the number of creditors eligible to vote. This result is accomplished by offering creditors holding small claims of perhaps a few hundred dollars each a 100% payment and thus providing that they are not impaired. The treatment of the over and under $20,000 claims is identical in the plan in these classes and is not provision for payment in full. No administrative convenience is being served and both classes are impaired.

■ Although § 1122(a) deals with the placing of dissimilar claims in the same class, it by necessary implication deals with the placing of similar claims in different classes. There is no authority for classifying similar claims differently other than § 1122(b) just discussed. General unse-

cured claims are all alike, whether they are disputed or not, whether over or under $20,000. Thus, unless Bekins or Keel consents to a different and/or lesser treatment than that of other general unsecured creditors they may not be separately classified. Classification cannot be used to divide like claims into multiple classes in order to create a consenting class so as to permit confirmation.

The second key area of plan deficiency deals with the means of execution. Mastercraft Record Plating, Inc. ("Mastercraft"), the main one of these three related debtors, operates a record stamping plant at 609 West 51st Street, New York City. Mastercraft's lease for these premises expired by virtue of the end of the term granted in August, 1981 and Mastercraft is under a court direction to remove from the premises. Unless and until Mastercraft removes its business and re-establishes it elsewhere these cases are at a standstill. If it is unable to move, these cases will almost certainly move into a liquidation mold. The only firm sources of funding for the plan other than future operations are stated to be the recovery of a preference received by Keel and of an overpayment to Bekins, the landlord of the West 51st Street premises. Although the Keel payment is apparently recoverable, the Bekins overpayment is not due to the claims that Bekins has against the debtor-in-possession.

Keel's plan is no better constructed and must also fail. It likewise cannot meet the standards for confirmation even if it were accepted.

The issue underlying all these disputes is whether Keel does, in fact, have a claim. To date, Keel has never filed a proof of claim. Suggested Interim Rule 3001(b)(3), adopted as a local rule, provides that a claim may be filed at any time prior to the approval of the disclosure statement, unless a different time is fixed by the court. The court in these cases did fix a different time for the filing of claims of creditors scheduled as disputed, and Keel was scheduled as disputed, that time was on or before three days prior to the date of the hearing on

confirmation. Parenthetically, it may be noted that confirmation was the so-called bar date under the former Bankruptcy Act. It is possible that the order fixing the claimsbar date should be interpreted to mean three days before the actual date fixed in the order, July 14, 1982, rather than three days before confirmation actually occurs. Given that the order fixing the confirmation hearing was amended to change the confirmation hearing date and that this amendatory order contained the same bar date language, the language should be construed against the drafter and in favor of the meaning providing for a "floating" bar date depending on the date of the hearing when confirmation actually occurs. Thus, Keel could still file a timely proof of claim. Moreover given that all parties had treated Keel as a claimant in these cases and in light of Keel's active participation, no surprise or prejudice is involved in permitting the filing of a claim at this time. Compare *In re Rite Autotronics Corporation,* 27 B.R. 599 (Bkrtcy.App. 9th Cir.1982) (claim allowed even though tardily filed because of circumstances present) and *In re Oakton Beach & Tennis Club, Inc.,* 9 B.R. 201 (Bkrtcy.E.D.Wis.1981) (excusable neglect forms basis to permit filing of late claim).

■ Even though no formal claim has yet been filed, given the potential significance to confirmation of the Keel claim because of its size, the court will consider certain issues relating to the allowability of Keel's claim. First, it cannot be disputed that a creditor's claim cannot be allowed if the creditor has received a preference or fraudulent conveyance unless and until the preference or fraudulent conveyance is surrendered. Bankruptcy Code § 502(d). Keel obtained a judgment in the amount of $264,838.60 against Mastercraft shortly before these Chapter 11 cases were filed. Keel caused the Sheriff to levy and the Sheriff seized on Keel's behalf, and apparently still holds, the sum of $25,772.97. These funds have not been turned over to these estates. If Keel is a creditor, an issue discussed below, the levy would be voidable as a preference. If Keel is not a creditor,

no consideration existed for the levy and it may be avoided as a fraudulent conveyance.

As just stated Keel has a judgment against Mastercraft obtained before the filing of the petition. The judgment is based upon an arbitration award issued in Keel's favor. On the date the petitions were filed the automatic stay intervened to prevent Keel from taking any act enforce the judgment. The debtors-in-possession were thus protected by the automatic stay and could have awaited the filing of a claim by Keel. Instead they choose, without seeking any authority from this court, to pursue a state court appeal and the judgment was ultimately affirmed.

■ But for any effect of this post-petition activity, this court is satisfied that Keel's judgment cannot form the basis of an allowable proof of claim in this court. The bankruptcy court is the final arbitrator of the allowability of claims. Generally it will afford *res judicata* effect to a judgment and allow a claim on the basis of the judgment without looking behind the judgment. However, in a narrowly defined group of situations, the bankruptcy court may and does look behind the judgment.

■ The leading Second Circuit case on this issue is *Margolis v. Nazareth Fair Grounds & Farmers Market,* 249 F.2d 221 (2d Cir.1957). Citing extensively from the *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the Second Circuit held

"To the extent that equitable principles require re-examination by the bankruptcy court of the bases for the judgment where these bases have been or could have been previously adjudicated the doctrine of *res judicata* is inapplicable in bankruptcy proceedings." 249 F.2d at 224.

This is so because

"the merger of a claim into a judgment does not change its nature so far as provability is concerned * * * so the court may look behind the judgment to determine the essential nature of the liability for the purposes of proof and allowance."

*Pepper v. Litton, supra,* 308 U.S. at 305–6, 60 S.Ct. at 244–45.

Thus, the bankruptcy court may look behind the judgment to determine whether the claim is founded upon no real debt. *Margolis v. Nazareth Fair Grounds & Farmers Market,* 249 F.2d at 224. *See also In re Timenterial, Inc.,* 1 B.C.D. 368 (Bkrtcy.Conn.1973), *aff'd* 1 B.C.D. 374 (D.Conn.1974); *In re Farrell,* 27 B.R. 241 (Bkrtcy.E.D.N.Y.1982) (appeal pending). The duty to examine and pass on proofs of claim is that of the bankruptcy court alone, and cannot be delegated. In *Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946), the United States Supreme Court applied *res judicata* to bar relitigation in the bankruptcy court when the trustee in bankruptcy had secured the court's permission to continue an appeal from the state court judgment and lost. Here, these debtors-in-possession never obtained court approval to continue the appeal, thus preventing the court and creditors from making any determination as to whether the matter should proceed or not in the state courts. Nor is the court persuaded that *Heiser* compels that the *res judicata* effect be given to the entirety of the arbitration award under the circumstances of this case.

■ The Keel judgment is based on an alleged breach of a contract dated May 24, 1973, a copy of which is annexed as Appendix A. The contract requires Woodbridge Plastics, Inc., a corporation then owned by Len Frank, one of the stockholders of these debtors, to supply certain vinyl compound used in record production to Keel. The compound was not supplied, Woodbridge alleged that Keel refused to take the compound; Keel responded that there was a failure to supply the compound because the Arab oil embargo affected the prices so that a larger profit could be made by selling elsewhere. The arbitration proceeding was acrimonious and lengthy and dealt with a multitude of technical issues relating to the calculation of damages. During the course of the arbitration, Mastercraft failed to raise, either as a defense to arbitration itself or as a defense to the substance of the claimed breach, that it had no contractual duty whatsoever to supply the compound. This issue was not raised until after Keel moved to confirm the arbitration award. Confronted with the volume of papers then presented it is little wonder that the court confirmed the arbitrator's award.

This court is unprepared to revisit the calculation of damage issue, involving as it does a myriad of facts and extensive prior testimony. However, as complex as that issue is, is as simple as is the issue of Mastercraft's contractual liability. There simply is not any. No evidence needs to be adduced. Interpretation of an unambiguous contract is a matter of law that requires no reference to any facts. Plainly and simply there is not and never has been an obligation on Mastercraft to supply vinyl compound to Keel. Thus, Keel's claim cannot be allowed on the basis of its judgment.

Keel has attempted to overcome this plain absence of contractual liability by asserting that the judgment was based on a piercing of the corporate veil. However, the arbitration did not proceed on that basis and the only testimony pointed to on appeal in the voluminous arbitration record simply is an insufficient evidentiary basis on which to pierce the corporate veil.

Keel's motion to vacate the order approving the disclosure statement is denied. Mastercraft's application seeking to find Keel's claim time barred is denied. The motion of the Creditors' Committee seeking to disallow Keel's claim until the monies levied upon are surrendered to the estate is granted. The Creditors' Committee's motion to confirm the plan is denied at this time.

It is so ordered.

### APPENDIX A

### EXHIBIT 2

THIS AGREEMENT made this 24th day of May, 1973, between RALEIGH RECORDS, INC., (Raleigh), its related corporations, MASTERCRAFT RECORD PLATING, INC., (Mastercraft), WOODBRIDGE

PLASTICS, INC., (Woodbridge), and KEEL MANUFACTURING, INC., (Keel).

## WITNESSETH:

WHEREAS, on August 24, 1972 Keel filed a petition for Plan of Arrangement under Chapter XI of the Federal Bankruptcy Act, in the Southern District of New York; and

WHEREAS, Keel, on the one hand, and Raleigh, Mastercraft and Woodbridge, on the other, desire and agree to terminate their Agreement dated March 6, 1972 (hereinafter the 1972 Agreement) and

WHEREAS, Keel, on the one hand, and Mastercraft and Woodbridge, on the other, desire to enter into a new supply agreement;

NOW, THEREFORE, the parties mutually agree as follows:

1. Raleigh, Mastercraft and Woodbridge hereby waive any and all claims against Keel for breach of the 1972 Agreement which they collectively or individually have, or may have, and said 1972 Agreement is hereby terminated.

2. Keel shall purchase from Woodbridge, and Woodbridge shall supply to Keel, 1,520,000 lbs per annum of Keel's record compound sand or dry blend requirements for a period of three (3) years beginning on the date upon which Keel's Chapter XI Plan of Arrangement is confirmed (hereinafter the "Supply Period"). The record compound and or dry blend requirement shall be purchased from Woodbridge and supplied to Keel, subject to the provisions hereinafter set forth, as follows:

40,000 lbs. per week within a 12 month period totalling 1,520,000 lbs. during each year of the Supply Period.

The above supply by Woodbridge to Keel shall be at a price of $.23 per pound. Said price shall be raised or lowered after any one seven (7) day period to the extent of any change in the price of prime vinyl copolymer resin by the major resin manufacturers to the record industry, and the cost of resin will be deemed to be two-thirds (⅔) of the total price, as charged to

Keel, of the compound or dry blend pursuant to this contract. Purchase orders shall be given to Woodbridge by Keel in conformity herewith for periods not to exceed six (6) weeks in duration. Each such period shall be deemed to be an independent purchase order period within the Supply Period. Notwithstanding the provisions of this paragraph 2, Keel shall not be obliged to purchase it's record compound or dry blend requirements from Woodbridge as aforesaid, if the price per pound of such compound or any dry blend charged to Keel by Woodbridge as determined hereunder exceeds 105% of the per pound price which Keel is bona fide offered by an established record compound or dry blend supplier, Woodbridge may elect, by written notice reasonably given, to supply Keel in the quantity described herein at a price per pound not to exceed more than 105% of the per pound bona fide price so offered by such established compound or dry blend supplier (hereinafter "the Elected Price"), in which event Woodbridge shall supply to Keel, and Keel shall be obligated to purchase Keel's record compound or dry blend requirements from Woodbridge at such Elected Price in the quantities and manner set forth above. In the event that Woodbridge fails to give reasonable notice or elects in writing not to supply Keel hereunder as described in the preceding sentence, then Keel's purchase obligation and Woodbridge's supply obligation hereunder for said six (6) week period shall terminate at the rate of 40,000 pounds of compound or dry blend per week.

3. All compound or dry blend supplied hereunder shall be of commercially acceptable quality, suitable for Keel's record manufacturing purposes.

4. Woodbridge shall invoice Keel weekly for the products sold and supplied to Keel under paragraph "2" and "3" herein, and Keel shall pay said invoices within sixty (60) days from the date of such invoices.

5. Neither party shall be liable for any failure to make or accept any one or more deliveries (or portions thereof) arising out of compliance with any law or other governmental actions; or arising out of acts of

God, fire, flood, explosion, strikes or other labor troubles, shortage or failure of supply of materials or equipment, interruptions of or delay in transportation, or any other circumstances of like or different nature beyond the reasonable control of the party so failing; and at the option of either party, the total quantity to be delivered shall be reduced by the quantity not delivered on account of any such cause.

6. *Arbitration.* Any controversy or claim arising out of, or related to, thus Agreement or the breach hereof, shall be settled by binding arbitration in the City of New York, by a panel of three (3) arbitrators, one of which shall be selected by Keel, the second of which shall be selected by Woodbridge, and the third of which shall be selected by agreement of the first two. In the event that the first two arbitrators so selected hereunder fail, refuse or neglect to so appoint a third arbitrator, then such third arbitrator shall be appointed by the American Arbitration Association.

7. This Agreement shall be binding on all successors and assigns of the parties.

8. This represents the entire Agreement of the parties, and any modifications to this Agreement must be in writing.

/s/ Len Frank
LEN FRANK, as President of
Raleigh Records, Inc.
Mastercraft Record Plating, Inc.
and
Woodbridge Plastics, Inc.

/s/ George Fishman
GEORGE FISHMAN, President of
Keel Manufacturing Corp.