**In re S & W ENTERPRISE, A Partnership, Debtor.**

**Bankruptcy No. 83–B–00259.**

United States Bankruptcy Court,
N.D. Illinois, W.D.

Feb. 9, 1984.

Gregg Grimsley, Peoria, Ill., and John Isaacson, Princeton, Ill., for petitioner.

Charles Beckman, Dixon, Ill., for respondent.

---

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Objection of Citizen's First National Bank of Princeton ("CFN") to Confirmation of the Chapter 11 Reorganization Plan (the "Plan") of the Debtor, S & W Enterprise ("S & W"). Attorneys John Isaacson of Princeton, Illinois, and Gregg Grimsley of Peoria, Illinois, represent CFN. Attorney Charles Beckman of Dixon, Illinois, represents the Debtor.

CFN argues that the Debtor has failed to meet the requirements for confirmation of

its Chapter 11 Reorganization Plan found in Subsections 3, 7 and 10 of Section 1129(a).

CFN's claim is $654,940, secured by equipment, machinery, and inventory having a liquidation value of $200,000.

There exist only two other non-insider pre-filing claims. These are: (1) the unsecured debt of $450 owed to M. David Cain & Associates, Ltd., for services rendered in auditing the Debtor's books, and (2) the $421.08 unsecured claim of Connors Farm & Home Service.

Inasmuch as CFN has not elected under Section 1111(b)(2)[1] to be treated as a secured creditor to the entire extent of its allowed claim, CFN is treated under Section 506(a)[2] as secured only to the extent of the value of the security. That portion of CFN's total claim which exceeds the value of the security shall be treated as an unsecured claim. Therefore, CFN has a $200,000 secured claim and a $454,940 unsecured claim.

In its Reorganization Plan, the Debtor places CFN's secured claim in a class by itself as the only secured claim. The Plan proposes to pay CFN upon confirmation $100,000 of its secured claim, the balance

---

1. 11 U.S.C. Section 1111(b)(2). Section 1111 provides that:

> (a) A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.
>
> (b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under Section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—
>
> (i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or
>
> (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.
>
> (B) A class of claims may not elect application of paragraph (2) of this subsection if—
>
> (i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

> (ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.
>
> (2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

2. 11 U.S.C. Section 506(a). Section 506(a) provides that:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

being staggered over a number of years beyond confirmation.

From the three unsecured claims, the Debtor proposes to create two separate classes. The first of these classes is comprised of non-priority, unsecured creditors whose claims are $1000 or less. In other words, this class would consist of the $450 claim of M. David Cain & Associates, Ltd. and the $421.08 claim of Connors Farm & Home Service. The second unsecured class, meanwhile, would consist only of CFN's unsecured claim of $454,940. The two sub-$1000 unsecured creditors would be paid in full within 30 days of confirmation, while the class made up of CFN's unsecured claim would be paid only if and when CFN's

secured claim was fully paid and, even in that event, over an extended period of time. CFN has voted to reject the Plan. The sub-$1000 class is the only class which voted to accept the Debtor's Reorganization Plan.

■ The Court notes that neither CFN nor the Debtor has mentioned in the pleadings and oral arguments the subject of "impairment" under Code Section 1124.[3] Likewise, CFN's Objection to Confirmation contains no reference to Code Section 1129(a)(8).[4] Inasmuch as the parties have remained silent on this subject throughout these proceedings, the Court shall presume for purposes here that the impairment of CFN's claims is not at issue in this matter.[5]

**3.** 11 U.S.C. Section 1124. Section 1124 provides that:

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest:
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
> (A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
> (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
> (3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—
> (A) with respect to a claim, the allowed amount of such claim; or
> (B) with respect to an interest, if applicable, the greater of—
> (i) any fixed liquidation preference to which the terms of any security representing

> such interest entitle the holder of such interest; and
> (ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

**4.** 11 U.S.C. Section 1129(a)(8). Section 1129(a)(8) provides that:
> (a) The Court shall confirm a plan only if all of the following requirements are met:
> (8) With respect to each class—
> (A) such class has accepted the plan; or
> (B) such class is not impaired under the plan.

**5.** If CFN's claims are, in fact, impaired, S & W's Plan would thus fail the requirement found in Section 1129(a)(8) that each class shall have (1) accepted the plan or (2) not be impaired under the plan. Such a conclusion would require a denial of confirmation of S & W's plan since no "cramdown" has been requested by S & W. Under Code Section 1129(b)(1) the proponent of a reorganization plan which proposes to cramdown an impaired class must make a specific request before a bankruptcy court will consider the proposed cramdown. This is supported by the Legislative History to Code Section 1129(b), which states that:
> "Paragraph (1) makes clear that this alternative confirmation standard, referred to as 'cramdown', will be called into play only on the request of the proponent of the plan." 124 Cong.Rec. H–11104 (1978), 124 Cong.Rec. S–17420 (1978).

Further, Judge Norton has stated that:
> "A proponent must request a cramdown, as the court cannot consider this alternative on its own motion." 3 Norton Bankr. & Prac. Section 63.24 (1981).

Also, some courts have held that an affirmative vote by an unimpaired class is insufficient to satisfy the requirement of Code Section 1129(a)(10). See *In re Marston Enterprises,*

■ The Court has a duty to examine all of the prerequisites found in Section 1129 prior to confirming a debtor's Chapter 11 Reorganization Plan. Thus, despite the fact that CFN's Objection to Confirmation is grounded only upon the requirements found in Subsections 3, 7 and 10 of Section 1129(a),[6] the Court will not limit its analysis to those Subsections.

## ANALYSIS

"In Chapter 11 cases, classification of claims may not only determine the return to individual creditors, but also may spell the life or death of the plan itself. A carefully crafted classification may result in acceptances of the plan, facilitate confirmation and avoid application of the absolute priority rule."[7]

This observation, found in a recent bankruptcy law publication, serves as a warning to those involved in Chapter 11 confirmation matters of the importance of subjecting classification schemes in reorganization plans to strict scrutiny.

It was further noted that:

*Inc.,* 7 B.C.D. 1403, 13 B.R. 514 (Bkrtcy.E.D.N.Y.1981); *In re Barrington Oaks General Partnership,* 8 B.C.D. 569, 5 C.B.C.2d 969, 15 B.R. 952 (Bkrtcy.D.Utah 1981); *In re Economy Cast Stone Co.,* 8 B.C.D. 807, 5 C.B.C.2d 1338, 16 B.R. 647 (Bkrtcy.E.D.Va.1981); *In re Pine Lake Village Apartment Co.,* 8 B.C.D. 736, 16 B.R. 750 (Bkrtcy.S.D.N.Y.1982). This Court is not necessarily in agreement with that view, but finds it unnecessary to confront the issue at this time as the proposed payment to the sub-$1000 class *after* the effective date of the plan leaves that class impaired despite their eventual receipt of full payment. See *Pine Lake,* 19 B.R. 819 at 831 (Bkrtcy.S.D.N.Y.1982). See also 11 U.S.C. Section 1124(3).

**6.** 11 U.S.C. Section 1129(a). Section 1129(a), in relevant part, provides that:

(a) The court shall confirm a plan only if all of the following requirements are met:
   (1) The plan complies with the applicable provisions of this chapter.
   (2) The proponent of the plan complies with the applicable provisions of this chapter.
   (3) The plan has been proposed in good faith and not by any means forbidden by law.
   (7) With respect to each class—
   (A) each holder of a claim or interest of such class—

"Chapter 11 gives no express guidance as to which claims must or can be separately classified. The absence of a statutory framework will generate substantial litigation."[8]

Further, Collier on Bankruptcy states that:

"Classification of claims and interests under the Code may be the source of considerable more litigation [than occurred under the Bankruptcy Act]."[9]

The Objection to Confirmation filed by CFN is a manifestation of these prophecies.

Here, the Court perceives the heart of CFN's Objection to Confirmation to be the inappropriateness of the efforts of S & W to separate the three unsecured claims into two distinct classes. CFN has expressed its dissatisfaction with this classification scheme in terms of an argument under Section 1129(a)(10). Specifically, CFN argues that the Debtor, for the sole purpose of fulfilling the requirement of Section 1129(a)(10), has created a class likely to vote to accept the Plan. Section 1129(a)(10)[10] requires that one class of non-insider claims vote to accept the Plan in order for it to be

   (i) has accepted the plan; or
   (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date; or
   (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims.
   (10) At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class

**7.** 2 Norton Bankr.L.Advisor 6 (1983).

**8.** Id.

**9.** 5 Collier on Bankruptcy § 1122.03[1][a] (15th ed. 1979).

**10.** 11 U.S.C. Section 1129(a)(10). See supra Note 6.

confirmed. CFN acknowledges that under Section 1122(b)[11] a "... plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to [some amount approved by the court]." The stated purpose of allowing the creation of a class such as S & W's proposed "sub-$1000" unsecured class is to promote convenience in the administration of the reorganization.[12] Thus, CFN argues, the creation of such a class for the sole purpose of complying with Section 1129(a)(10) is repugnant to both the purpose of Section 1129(a)(10) and the intent of its drafters and should not be permitted.

■ This Court agrees with CFN that using Section 1122(b) for the sole purpose of meeting the requirement of Section 1129(a)(10) was not a use contemplated by Congress. No such limitation, however, is stated within Section 1129(a)(10).

■ Nevertheless, all is not lost for CFN. Having selected the proper arrow, CFN simply failed to direct it toward the proper target. In other words, a faulty use of Section 1122(b) in classifying unsecured claims gives rise most appropriately to a denial of confirmation under Section 1129(a)(1),[13] not Section 1129(a)(10).[14]

The requirement set forth in Section 1129(a)(1) is simply that:

"(1) The plan complies with the applicable provisions of this Chapter."

■ An examination of the Legislative History of this Section reveals that although its scope is certainly broad, the provisions it was most directly aimed at were Sections 1122 and 1123.[15]

In its brief discussion of Section 1129(a)(1), Collier on Bankruptcy states that:

"The substantive provisions which are most relevant in the context of Section 1129(a)(1) are Sections 1122 and 1123."[16]

Norton Bankruptcy Law & Practice comments that:

"Before the Court can confirm a plan, the requirements of Chapter 11 must be met. Probably the most important provisions of Chapter 11, outside of the requirements of the confirmation section of the Code, which must be met, are those relating to classification."[17]

At this point, a closer examination of Section 1122(b) is required. That provision in its entirety states that:

"A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience."

Clearly, a classification scheme of the type proposed by S & W cannot be a part of a confirmed Chapter 11 Reorganization Plan unless the bankruptcy court approves such a scheme as being reasonable and necessary for administrative convenience.[18]

**11.** 11 U.S.C. Section 1122(b).

**12.** See id.

**13.** 11 U.S.C. 1129(a)(1). See supra Note 6.

**14.** The improper designation of a class under Section 1122(b), although giving rise to a failure of the Plan under Section 1129(a)(1), will not bring about simultaneous failure of the plan under Section 1129(a)(10) if another accepting class exists.

**15.** The drafters, discussing Section 1129(a)(1), stated that:

"Paragraph (1) requires that the plan comply with the applicable provisions of Chapter 11, such as Section 1122 and 1123, governing classification and contents of plan." H.R.Rep. No.

595, 95th Cong., 1st Sess. 412 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), U.S. Code Cong. & Admin.News, pp. 5787, 5912, 6368.

**16.** 5 Collier on Bankruptcy § 1129.02 (15th ed. 1979).

**17.** 3 Norton Bankr.L. & Prac. Section 63.06 (1981).

**18.** The debtors indicate in their Disclosure Statement that the separation of unsecured claims into two classes was indeed proposed in order to facilitate administrative convenience. They state that:

"The Plan of Reorganization is based upon the desire of the partners to continue in business and .... to pay small unsecured credi-

■ As described more fully herein, the Court finds that the proposal in the S & W Plan to separate the three unsecured claims into two distinct classes is not reasonable and necessary for administrative convenience, is not permitted under any other Code provision, and is thus not approved.

This finding is supported by the comments of Judge Norton in his treatise that:

"Unsecured claims will, generally speaking, comprise one class, whether trade, tort, publicly held debt or a deficiency of a secured creditor." [19]

And:

". . . it should no longer be permissible to classify for vote getting purposes." [20]

And:

"The Commission on the Bankruptcy Laws recommended that the power to separately classify some unsecured creditors be limited to a classification of $100 or less for administrative convenience. The dollar limit was dropped in Chapter 11 of the Code, but the intent of the Code is the same—*to weed out numerous claims and thereby avoid administrative cost.* It is not intended to allow gamesmanship in vote getting." [Emphasis Added] [21]

This Court finds additional support in the comments of Bankruptcy Judge Schwartzberg in *In re Pine Lake Village Apartment Co.*[22] In *Pine Lake* the debtors owed $10,400,000 in principal under a mortgage agreement. It was agreed that the apartment complex securing this debt had a value of only $6,400,000, leaving the mortgagee with a $4,000,000 unsecured claim. Besides the mortgagee, the only other claimants were trade creditors whose unsecured claims aggregated $44,952.06 and would have been fully paid had a Chapter 11 petition not been filed. The debtor's plan of reorganization apparently proposed to treat the mortgagee's entire claim, secured and unsecured, as one class and the unsecured claims of the trade creditors as a separate class.[23]

Unlike the case at bar, though, the issue in *Pine Lake* was whether to grant relief from the automatic stay.[24] There existed only a proposed reorganization plan, and no confirmation hearing had taken place. Nonetheless, the propriety of the unsecured claim classification scheme proposed by the debtor was placed at issue as part of the debtor's assertion that there existed a likelihood of reorganization. The mortgagee argued that its unsecured claim should properly be in the same class as the trade creditors so that its inevitable negative vote on confirmation would preclude the unsecured class from reaching the majority vote required for acceptances under Section 1129[25]; and that without the acceptance of the unsecured class the debtor could not achieve confirmation due to Section 1129(a)(10).

The debtor argued that the proposed unsecured creditor classification scheme was appropriate and that the affirmative vote of the trade creditor class was expected so as to meet the requirement of Section 1129(a)(10). The debtor anticipated a cramdown of the plan on the mortgagee. In support of its classification scheme, the Debtor reasoned that pursuant to contract the trade creditors had to be paid prior to

tors in cash in full to ease the administrative burden."

19. 3 Norton Bankr.L. & Prac. Section 60.05 (1981).

20. Id.

21. Id.

22. 19 B.R. 819, 6 C.B.C.2d 713, 8 B.C.D. 1402 (Bkrtcy.S.D.N.Y.1982).

23. *Pine Lake,* 19 B.R. at 832, 6 C.B.C.2d 728, 8 B.C.D. 1410.

24. *Pine Lake,* 19 B.R. at 821, 6 C.B.C.2d at 715, 8 B.C.D. at 1403.

25. 11 U.S.C. Section 1126. Section 1126(c) provides that:

"(c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan."

the payment of any other unsecured creditors, and that the deficiency claim of the mortgagee should therefore be subordinated to the rights of the trade creditors.[26]

Judge Schwartzberg observed that:

"In determining the designation of classes, reference must be made to 11 U.S.C. § 1123(a)(1) which requires that a plan shall designate, subject to Section 1122, classes of claims and classes of interest. This section is silent as to the manner in which the separate classes are to be designated nor does it reflect an authorization for designating several classes of unsecured claims as permitted in a Chapter 13 case pursuant to 11 U.S.C. § 1322(b)(1). The classification of claims and interests, as distinguished from the designation of classes, is covered by 11 U.S.C. § 1122(a) which permits the placing of claims or interests in a particular class only if such claim or interest 'is substantially similar to the other claims or interests of such class.' Consistent with this treatment of claims in a particular class is the provision in 11 U.S.C. § 1123(a)(4) that the plan must provide the same treatment for each claim or interest in a particular class. However, there is little guidance as to the designation of separate classes, except that 11 U.S.C. § 1122(b) does allow for administrative convenience a separate class that is less than or reduced to a dollar amount approved by the court as reasonable and necessary. This is the only exception expressed in the Code for separately designating unsecured claims. Any other designation would have to comply with 11 U.S.C. § 1129(b)(1) that prescribes as a prerequisite for confirmation that 'the plan does not discriminate unfairly.' "[27]

Finding that the Debtor's subordination argument lacked merit, the *Pine Lake* court held that:

"Therefore, there is no justifiable basis for creating two classes of unsecured creditors and classifying the unsecured trade creditors separately."[28]

And that:

"The creation of separate classes of unsecured and unsubordinated claims in order to allow gamesmanship in vote getting is not condoned under the Code. Indeed, a deficiency claim arising out of a secured interest in property is expressly treated as a recourse claim in 11 U.S.C. § 1111(b), even though the claim may be nonrecourse by agreement or applicable law. The recognition of the deficiency claim as entitled to the same treatment as all other unsecured claims under a debtor's plan would be undermined if debtors were permitted to classify separately such deficiency claims. The debtor may not ignore the rejection of its plan by the holder of a large unsecured deficiency claim simply because the debtor designated a specially preferred separate class of easily created trade creditors whose acceptances may be readily obtainable by offering them more than the disfavored deficiency claim holder. Manifestly such treatment of unsecured claims is unfairly discriminatory within the meaning of 11 U.S.C. § 1129(b)(1)."[29]

"... the trade creditors have been maneuvered into a separate class by the debtor solely for the purpose of being able to make this argument." *In re Pine Village Apartment Co.,* 21 B.R. 395, 397 (D.Ct.S.D.N.Y. 1982).
This comment was a mere footnote in the opinion of the District Court, which was passing upon an unrelated issue in the case. Nonetheless, it indicates some skepticism on the part of that court also as to the propriety of the debtor's proposed classification scheme as a means of satisfying Section 1129(a)(10).

---

**26.** *Pine Lake,* 19 B.R. at 829, 6 C.B.C.2d at 724, 8 B.C.D. at 1408.

**27.** *Pine Lake,* 19 B.R. at 829, 830, 6 C.B.C.2d at 726, 8 B.C.D. at 1408, 1409. This Court points out that if a classification is not in compliance with Section 1122, the requirement of Section 1129(a)(1) could not be met and thus Section 1129(b)(1) would not be brought into play. See note 44, infra.

**28.** *Pine Lake,* 19 B.R. at 831, 6 C.B.C.2d at 727, 8 B.C.D. at 1409.

**29.** *Pine Lake,* 19 B.R. at 831, 6 C.B.C.2d at 727, 8 B.C.D. at 1409. Note also the comment of the District Court in *Pine Lake* that:

In essence, it appears that in *Pine Lake* the court found that the proposed classification scheme did not comply with Section 1122(a) [30] due to the improper classification of the mortgagee's unsecured claim. It further appears that the court found it unnecessary to apply the "reasonable and necessary" test of Section 1122(b) because the debtor's plan did not attempt to break down the unsecured claims in the manner permitted under that provision.

A significant difference thus exists between the approach taken in *Pine Lake* and that taken here. The facts here require application of the "reasonable and necessary" test as the Debtor specifically attempts to employ the Section 1122(b) exception by designating a separate class of unsecured claims that is less than or reduced to a particular amount purportedly for administrative convenience.

■ Regardless of this difference, this Court finds itself in basic agreement with Judge Norton and Judge Schwartzberg that the manipulation of unsecured claims, interests, or classes for the sole purpose of complying with the voting requirement of Section 1129(a)(10) shall not be tolerated. Of particular note in this case is the impropriety of engaging in such manipulation under the guise of promoting administrative convenience under Section 1122(b). As will be seen, this becomes critical when the "reasonable and necessary" standard of Section 1122(b) is applied to a debtor's proposed unsecured creditor classification scheme.

The Court finds only one case which provides some degree of guidance in the application of the "reasonable and necessary" test of Section 1122(b). That is the opinion of Judge Abrams in *In re Mastercraft Record Plating, Inc.* [31]

As here, the Mastercraft Reorganization Plan provided for the separate classification of general unsecured claims based on amount. Those less than $20,000 comprised one proposed class, whereas those above $20,000 comprised another proposed class. In addition, unlike S & W's Plan, the Mastercraft Plan proposed a third class of general unsecured claims: those which are disputed. The first two unsecured classes were to be treated identically under the plan, with no description contained in the plan as to the treatment of the class of disputed claims. [32]

Judge Abrams apparently found that the Mastercraft Plan, unlike the S & W Plan here, lacked clarity as to whether Mastercraft was relying upon Section 1122(b) in creating the sub-$20,000 class. Nevertheless, the court conducted a Section 1122(b) analysis and found that "[i]f the under $20,000 class was intended to take advantage of this section it fails the test." [33]

Judge Abrams held that:

"The purpose of 1122(b) is to allow a plan to reduce the number of creditors eligible to vote. This result is accomplished by offering creditors holding small claims of perhaps a few hundred dollars each a 100% payment and thus providing that they are not impaired. The treatment of the over and under $20,000 claims is identical in the plan in these classes and is not provision for payment in full. No administrative convenience is being served and both classes are impaired." [34]

This Court believes that application of the "reasonable and necessary" test was appropriate in *Mastercraft,* but has difficulty discerning the exact standards which were utilized in applying the test: Did the proposed classification scheme fail the test because it left the claims in the sub-$20,000 class impaired? If so, from what authority is this standard derived?

Is the purpose of Section 1122(b) merely to allow a plan to reduce the number of

---

**30.** 11 U.S.C. Section 1122(a).

**31.** 32 B.R. 106, 8 C.B.C.2d 1268 (Bkrtcy.S.D.N.Y.1983).

**32.** *Mastercraft,* 32 B.R. at 108, 8 C.B.C.2d at 1270.

**33.** Id.

**34.** Id.

creditors eligible to vote on a reorganization plan as the *Mastercraft* court asserts?[35] Although such a result might be viewed as promoting administrative convenience, what legislative or statutory language gives rise to this narrow definition of the type of administrative convenience sought to be promoted by classification under Section 1122(b)? This Court is aware that the Legislative History with respect to Section 1122(b) contains comments such as the following:

"... payments in cash of small claims in full is common practice in reorganization."[36]

But this Court does not read this legislative observation as requiring that, where a plan provides for the full payment of a small-claims class under Section 1122(b), such payment must occur on the effective date of the plan in order to pass the "reasonable and necessary" test. S & W's proposed classification scheme, for instance, provides for payment in full of its sub-$1000 class, but only within 30 days of the effective date of the Plan. This leaves this class impaired under the Plan, and under the *Mastercraft* approach would seem to require a finding that no administrative convenience is served by the proposed classification under Section 1122(b). Such a reading of "reasonable and necessary for administrative convenience" strikes this Court as unduly narrow.

\*       \*       \*

■ Against the background of an express lack of statutory guidance, an ambiguous Legislative History, and a lack of helpful case law, this Court now proceeds to subject the Debtor's proposed unsecured creditor classification scheme to the "rea-

sonable and necessary" test of Section 1122(b).

First, is it "necessary" for administrative convenience to split S & W's three unsecured claims into two classes? The Court finds that "necessary" in the context of Section 1122(b) means something more than just tending to ease the administrative burden. Treating the unsecured claims as members of the same class must be truly burdensome before a bankruptcy court should consider deviating from the general rule and classifying them separately. In this case the Court finds that a negligible administrative burden, and thus no necessity, exists. There are, after all, only three unsecured claimants, two of which comprise only $850 in claims. The complexity of dealing with these claims is not exactly mind-boggling.

■ Even in a case where a bankruptcy court finds that separating unsecured claims into separate classes is to some extent necessary, the proposed classification scheme must still pass the reasonableness test in order to gain court approval. Thus the Court must determine whether the proposed classification is a "reasonable" means of achieving the goal of promoting administrative convenience. A balancing is required between the administrative benefits achievable under the proposed unsecured creditor classification scheme and the negative effects the scheme renders upon other entities and Code policies. Here, the Court finds that not only is the separation of claims unnecessary to promote administrative convenience, it falls decisively short of being "reasonable." To hold otherwise would be to make worthless Code provisions

**35.** One author indicates that the purpose of utilizing Section 1122(b) is not to reduce the number of creditors eligible to vote, but rather to reduce the number of creditors who will vote to reject the plan. The latter goal does not require leaving these creditors unimpaired. Although impaired, these creditors may agree to vote to accept the plan where they are offered some reasonable payment short of full payment on the effective date of the plan. See P.F. Coogan, Confirmation of A Plan Under the Bankruptcy Code, 32 Case W.Res.L.Rev. 301, 329 (1982), 1983 Am.Sur.Bankr.L. 99, 120, 121

(1983). [Further, note the comment in Norton Bankruptcy Law and Practice [3 Norton Bankr.L. & Prac. Section 60.05 (1981) ], quoted supra, which indicates that the purpose of Section 1122(b) is to "weed out numerous claims and thereby avoid administrative cost." This more generalized view is adopted by this Court.]

**36.** 5 Collier on Bankruptcy § 1122.03[2]. (15th ed. 1979).

such as Section 1129(a)(10) and to render meaningless the placing by Congress of the terms "reasonable" and "necessary" in Section 1122(b). In short, the Debtor's creation of separate unsecured classes is a fiction born of the necessity to satisfy Section 1129(a)(10).

██ In addition, this Court adopts the position that the Legislative History, the existence and language of the administrative convenience exception of Section 1122(b), and the language of Section 1122(a), lead to an implication that general unsecured claims not separable under Section 1122(b) must be placed in the same class.[37] In accordance with this view, no other basis can be found upon which to allow S & W's proposed unsecured creditor classification scheme.

This Court is aware of the viewpoint expressed in Collier on Bankruptcy interpreting Section 1122 as permitting the separate classification of claims for purposes other than that described in Section 1122(b):

"The Code does not require all nonpriority prepetition unsecured claims to be placed within a single class. While the Code specifically allows a plan to provide for separate classification for administrative convenience of claims of less than a specific amount, the Code also implicitly recognizes that separate classification of unsecured claims may be appropriate."[38]

This perceived implication is apparently derived from pre-Code classification cases as well as from reference to portions of Section 1124.[39]

The Collier on Bankruptcy interpretation is followed in *Ledford v. McCormick*,[40] which involved a Chapter 13 plan. That bankruptcy court held that:

"11 U.S.C. § 1122(a), incorporated by reference into 11 U.S.C. § 1322(b)(1), does require that claims placed in a 'particular class' be 'substantially similar.' There is, however, no requirement in 11 U.S.C. § 1122, or elsewhere in the Bankruptcy Code, that all 'substantially similar' claims be placed in a single class. Instead, 11 U.S.C. § 1122(a) limits the number of claims which 'may be placed' in a given classification, without limiting the number of types of classifications themselves."[41]

Section 1122(a) provides that:

"Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

The better view is that espoused by Judge Abrams in *Mastercraft* after holding that the plan's proposed unsecured creditor classification scheme failed the "necessary and reasonable" test of Section 1122(b):

"Although § 1122(a) deals with the placing of dissimilar claims in the same class, it by necessary implication deals with the placing of similar claims in different classes. There is no authority for classifying similar claims differently other than § 1122(b) just discussed. General unsecured claims are all alike, whether they are disputed or not, whether over or under $20,000. Thus, unless Bekins or Keel consents to a different and/or lesser treatment than that of other general unsecured creditors they may not be separately classified. Classification cannot be used to divide like claims into multiple

---

**37.** "There is little guidance as to classification in the more complex cases where some of the unsecured claims are equitably or consensually subordinated to others." 2 Norton Bankr.L.Advisor, 7, 8 (1983).

The decision here does not go so far as to address the issue of the proper classification of subordinated unsecured claims, the treatment of which may differ from that of the claims involved here.

**38.** 5 Collier on Bankruptcy, 1122.03[4] (15th Ed.1979). See also 2 Norton Bankr.L.Advisor 6, 7, where the Collier on Bankruptcy analysis is criticized.

**39.** Id.

**40.** 27 B.R. 434, 8 C.B.C.2d 352 (Bkrtcy.S.D. Ohio 1983).

**41.** *Ledford,* 27 B.R. at 437, 438, 8 C.B.C.2d at 355, 356.

classes in order to create a consenting class so as to permit confirmation."[42]

■ The Court's analysis next turns to Section 1123,[43] entitled "Contents of Plan", which provides in relevant part that:

"(a) A plan shall—

(1) designate, *subject to section 1122* of this title, classes of claims other than claims of a kind specified in Section 507(a)(1), 507(a)(2), or 507(a)(6) of this title and classes of interest." [Emphasis added]

The designation of classes in the Debtor's Plan is thus subject to the limitations of Section 1122, and as the Debtor's classification scheme is not in compliance with that section, it likewise fails under Section 1123(a)(1).

Inasmuch as the Court has determined that the Debtor's Plan is not in compliance with applicable provisions of Chapter 11—particularly Sections 1122 and 1123(a)(1)—confirmation must be denied pursuant to Section 1129(a)(1).[44]

**42.** *Mastercraft,* 32 B.R. at 108, 8 C.B.C.2d at 1270.

**43.** 11 U.S.C. Section 1123.

**44.** This Court notes that the *Pine Lake* analysis jumps over the plan's Section 1129(a) problems and into Section 1129(b). Section 1129(b) provides that:

"(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(1) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(11) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

(C) With respect to a class of interests—

(i) the plan provides that each holder of an interest of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, and the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

But a cramdown under Section 1129(b) would not be possible if there were shortcomings under Section 1129(a) other than under subsection (a)(8). Of particular note is that Section 1129(b)(1) specifically recites that it applies only ". . . if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan. . . ." Perhaps *Pine Lake* should have gone directly from its rejection of the proposed classification scheme under Sections 1122 and 1123 to find denial of confirmation under Section 1129(a)(1) to be the likely result.

The *Pine Lake* court eventually did turn to Section 1129(a)(1) for support, but only with regard to the fact that it found the proposed plan unsatisfactory under the "fair and equitable" test of Section 1129(b)(1). *Pine Lake,* 19 B.R. at 831, 6 C.B.C.2d at 728, 8 B.C.D. at 1410. Apparently, finding the proposed plan not in compliance with the provisions of Section 1129(b), the court found that Section 1129(a)(1) was in turn not met. Despite this suspect approach, the *Pine Lake* court, like CFN here, arrives at a just result, but over an unnecessarily curcuitous path.

Finally, the Debtor's compliance with Section 1129(a)(10) was based solely upon the affirmative vote of the sub-$1000 class of unsecured creditors. Therefore, the Court's rejection of that classification as inappropriate negates the affirmative vote and causes the Plan to fail simultaneously under Section 1129(a)(10). (As noted earlier, failure under Section 1129(a)(10) isn't always mandated by the rejection of a proposed classification under Section 1122(b). This will occur only where the rejected class is the lone class voting to accept the plan.)

In view of the foregoing, the Court concludes that confirmation should be denied and that it is unnecessary to analyze the issues raised by CFN under Sections 1129(a)(3) and (a)(7).

ORDER ENTERED ACCORDINGLY.