**In re Walter C. WARD, Debtor.**

**Bankruptcy No. 87–03232–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 24, 1988.

A. Rodger Traynor Jr., Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for City Nat. Bank of Florida.

John Genovese, Stroock, Stroock & Lavan, Miami, Fla., for debtor.

Lisette Reid, Staff Atty., Office of U.S. Trustee, Miami, Fla.

Alan M. Sandler, Sandler & Sandler, Coral Gables, Fla., for Joanna Dunlap F/K/A Joanna Ward.

William Frey, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for Admiral Ins.

Stephen J. McDonald, Gossett, McDonald, Gossett & Crawford P.A., Hollywood, Fla., for Carlos M. Marin, Jr.

## ORDER DENYING SECTION 1129 "CRAMDOWN"

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE was heard by the Court on Wednesday, July 13, 1988, on the debtor's Motion for Cramdown pursuant to Bankruptcy Code Sec. 1129, after the debtor failed to receive the requisite number of acceptances of his proposed Second Amended Plan of Reorganization. The Court heard arguments from counsel for the debtor, counsel for various creditors, and the U.S. Trustee, and after having considered same, the Court is of the clear view that the cramdown is not appropriate in the circumstances of this case. Accordingly, the debtor's Motion for Cramdown shall be and the same is hereby DENIED for both of the reasons hereinafter discussed, either one of which would be sufficient to support the denial of the motion.

The debtor is a licensed physician and a practicing attorney in Dade County who has historically enjoyed a very substantial income from the practice of law, specializing in plaintiffs' medical malpractice litigation. Indeed, in the calendar year of 1984, the debtor's income from the practice of law was nearly $1.2 million dollars, even though he had no proprietary interest in the law firm that employed him. Shortly after filing his Chapter 11 petition with this Court, the debtor started a new law firm, which is the vehicle through which the debtor proposes to fund his Second Amended Plan of Reorganization. While the debtor is the one hundred percent stockholder of that professional association, the Second Amended Plan of Reorganization goes to great length to point out that the new law firm is not a debtor, and that its assets will not be subject to the jurisdiction of this Court.

The Second Amended Plan defines the "new firm" as the debtor's present law firm, or any successor firm in which he holds a controlling interest. Other important definitions under the plan are "partnership distribution" which is defined to mean "the amount of the debtor's annual distribution in excess of $100,000 from the 'New Firm' after payment of overhead, the financing claims, taxes, distributions to other partners and any sums necessary for capital reserves." Finally, the debtor defines his "Delinquent Property Settlement Obligations" as being the "allowed, *nondischargeable* claims" (emphasis added) of

the debtor's Former Spouse which remain unpaid as of the Effective Date, specifically, those amounts garnished from the former spouse from the Internal Revenue Service, plus interest and attorney's fees incurred as a result of the garnishment, to which the debtor has agreed in advance.

## IMPROPER CLASSIFICATION

■ The creditors have taken particular umbrage at the debtor's treatment of his "delinquent property settlement obligations" to his former spouse, which the Second Amended Plan proposes to pay in full, with interest at the market rate, over a period not to exceed six years. This Court is persuaded by the creditors' contentions that the delinquent obligations to the former wife have been improperly separately classified from the other general unsecured creditors. Solely as a result of that improper classification, the debtor was able to obtain the requisite acceptance from at least one impaired class, since the former wife is the sole member of the only impaired class which has accepted the Second Amended Plan.

The case law consistently disapproves efforts at manipulation of unsecured claims into inappropriate separate classifications, even when that manipulation is engaged in under the guise of promoting administrative convenience, *In Re: S & W Enterprise*, 37 B.R. 153 (Bkc.N.D.Ill.1984). Judge Norton's treatise likewise notes that "it should no longer be permissible to classify for vote getting purposes", 3 Norton Bankr.L. & Prac. Sec. 60.05 (1981). Clearly, Congress intended all unsecured claims of a similar nature to be grouped within one class, unless a separate classification is established under Sec. 1122(b), *In Re: Fantastic Homes Enterprises, Inc.*, 44 B.R. 999 (M.D.Fla.1984). See also, *In Re: Pine Lake Village Apartments Co.*, 19 B.R. 819 (Bkc.S.D. New York 1982) and *In Re: Mastercraft Record Plating, Inc.*, 32 B.R. 106 (Bkc.S.D. New York 1983) ("Classification cannot be used to divide like claims into multiple classes in order to create a consenting class so as to permit confirmation.")

The debtor wishes to stipulate that his delinquent obligations to his former wife are nondischargeable, but that very concession by the debtor is another substantial factor which precludes this plan from passing the proverbial "smell test". This Court can see no supportable basis for the suggestion that the delinquencies owed to the former wife are nondischargeable, since they are nothing but garden variety pure property settlement obligations which are clearly dischargeable, as contrasted with alimony obligations which are generally nondischargeable under Code Sec. 523(a)(5). Indeed, the debtor's property settlement agreement contains entirely separate sections specifically devoted to alimony and support obligations which are spelled out in detail, some of which have presumably been fulfilled with the passage of time. The case at bar is essentially indistinguishable on that point from *In Re: French*, 19 B.R. 255, 6 C.B.C.2d 636 (Bkc.M.D.Fla. 1982) (Proctor, J.).

The property settlement agreement between the debtor and his former spouse are filed among the public records of Dade County at ORB 11820, Page 2431, *et seq.* When entering into that agreement in 1983, the parties explicitly recognized the existence of certain liabilities for income taxes for the calendar years prior to 1983, and the husband specifically agreed to hold his ex-wife harmless and to indemnify her from all claims or liabilities that may be imposed from their past filing of joint federal income tax returns. Prior to the filing of this Chapter 11 petition, the Internal Revenue Service garnished the former wife's bank account and obtained approximately $80,000, which was applied toward their joint indebtedness from tax years prior to 1983. According to the testimony of the debtor at his 2004 examination, it is the obligation to reimburse his ex-wife that sum approximating $80,000 which comprises the entirety of his "delinquent property settlement obligation".

In the eyes of this Court there is simply no merit in the contention that the obligation to make reimbursement for the tax garnishment is in any respect nondis-

chargeable. The debtor seeks to effectively "take a dive" in response to his ex-wife's not yet litigated contentions for nondischargeability, and in exchange he is being allowed to pay her over time, with interest at market rates, provided that the payment is eventually in full, rather than the speculative potential dividend which the other unsecured creditors are left to hope for. While the world would surely be a better place if all former spouses were so hospitable and cooperative with one another, this Court cannot in conscience permit that coziness to be the foundation for a cramdown against other creditors similarly situated in this case.

This Court would still hold the ex-wife's claim to be improperly classified even if it were truly nondischargeable. As noted above, the Code only allows subclassification of unsecured creditors when necessary for administrative convenience, a factor clearly not present here. Otherwise, the mere fact that an unsecured creditor's claim is nondischargeable, for whatever reason, is not a basis for discriminating in favor of or against that unsecured creditor under a Chapter 11 plan, *In Re: Howell*, 84 B.R. 834 (Bkc.M.D.Fla.1988) (Proctor, J.). This debtor's attempt to do otherwise is the antithesis of a "fair and equitable" plan which this Court would need to see in order to force a cramdown.

### ILLUSORY PLAN

■ The creditors also object to the unfettered discretion which the Second Amended Plan bestows on the debtor with respect to whether, if ever, any distribution will be paid to unsecured creditors. The creditors correctly point out that because the debtor is the sole stockholder of his law firm he will always retain the control as to whether or not his new firm will ever make distributions to him in excess of the $100,000 threshold sum provided in the plan. There would appear to be substantial justification for the concern that the debtor would be free to manipulate the finances of

his new law firm so that substantial payments were made to cover "overhead" and/or "capital reserves" for the first five years of the law firm's operation, resulting in little or nothing to be distributed to the debtor directly to then be shared with his creditors. The foregoing problem is exacerbated by the specific provision of the plan that the new law firm will not be subject to the jurisdiction of this Court.

The debtor argues that because the new law firm is a Subchapter S corporation it *must* distribute all income out to its shareholders. A simple response to that argument is two-fold. First, the Subchapter S election can be readily changed in the future. Secondly, if the debtor were to elect to have his wholly owned law firm pay for his automobile, his residence, his country club membership, and other normal living expenses, there may well be nothing by way of net income that the Subchapter S corporation would have to pass through to the shareholder. Even more fundamental is the unfettered discretion which the debtor will have to hire and fire employees of the law firm, including his college age sons if he so desires, and to pay them whatever salary he sees fit regardless of the value of any services they or any other employee might render to the new firm. There is nothing but the supposition of the debtor's continued good faith that would prevent the problems which the creditors fear. This Court cannot, in the future, make the debtor structure the finances of his wholly owned law firm in order to comply with what might be determined in the future to be the requirements of good faith.

Because of the foregoing structure for the implementation of the plan which the debtor has selected, the plan cannot be confirmed over creditors objections while it contains the essential features hereinabove enumerated. See *Northwest Bank Worthington v. Ahlers.**

Confirmation of the proposed Second Amended Plan has already been denied by

---

* Even if the court believes unsecured creditors would be better off if the plan is confirmed, "... that determination is for the creditors to make in the manner specified by the Code 11 U.S.C. § 1126(c)." .... "The courts applying the code must effectuate their decision." 456 U.S. —— at —— and ——, 108 S.Ct. 963 at 969, 99 L.Ed.2d 169 at 179 and 180 (1988).

separate order of this Court. Since cramdown is herein being denied, the debtor is given 15 days from and after the date of this order within which to file a third amended plan of reorganization which cures the deficiencies hereinabove recited, failing which the case will automatically be converted to Chapter 7 without further order of court.