ST. LOUIS UNION TRUST CO. et al. v.
CHAMPION SHOE MACHINERY
CO. et al.

No. 11562.

Circuit Court of Appeals, Eighth Circuit.

Feb. 6, 1940.

George W. Simpkins, of St. Louis, Mo.
(Thomas S. McPheeters and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for appellants.

George T. Priest (Robert E. Moloney
and Boyle & Priest, all of St. Louis, Mo.,
on the brief), for appellees.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from an order confirming a plan of reorganization of the Champion Shoe Machinery Company, debtor, and Champion Acceptance Corporation (a wholly-owned subsidiary of Champion Shoe Machinery Company), auxiliary debtor, in proceedings under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The appellants are the owners of $6,500 face value of bonds of Champion Acceptance Corporation which were originally due February 1, 1933. They objected to the plan of reorganization on the ground that the bondholders had all been placed in one class, instead of divided into three classes, and that the plan approved failed to accord them rights which the court was bound to recognize.

The facts are undisputed. The Champion Acceptance Corporation on February 1, 1929, issued $1,400,000 of bonds falling due as follows: one-third February 1, 1932, one-third February 1, 1933, and one-third February 1, 1934. The bonds bore interest at 6% before maturity and 8% after maturity. They were guaranteed as to both principal and interest by Champion Shoe Machinery Company. The trust indenture securing the bonds was made by Champion Acceptance Corporation, with Mercantile Trust Company (now Mercantile Commerce Bank and Trust Company) as trustee. It required the deposit with the trustee of chattel mortgages, vendor's liens and lien con-

tracts, conditional sales contracts, lease contracts and similar securities, the aggregate principal amount of which should at least equal 120% of the face of the bonds outstanding. It also provided that Champion Acceptance Corporation should have the right to collect payments of principal and interest maturing upon pledged securities, but should pay over the proceeds collected to the trustee or deposit with it, in lieu thereof, acceptable securities of a similar nature equal to the amount collected, and should, with certain limitations, substitute cash or other acceptable securities for any mortgage securities in default.

Section 2 of Article IV of the trust indenture provided as follows: "Section 2. In order to prevent any accumulation of the principal of any bonds or the interest coupons after maturity, the Corporation agrees that it will not directly or indirectly, through any arrangement, extend or assent to any extension of the time of payment of the bonds or of the interest coupons secured hereby, and in case the time for payment of any such bonds and interest coupons shall be extended beyond the time originally fixed for maturity, such bonds and coupons shall not be entitled in case of any default hereunder to the benefit or security of this Indenture, except subject to the prior payment in full of the principal of all the remaining bonds, issued and outstanding hereunder, not extended, and of such portion of the accrued interest thereon as shall not be represented by such extended coupons."

Section 1 of Article VI of the trust indenture provided as follows: "Section 1. No bond or coupon pertaining to any of said bonds which in any way shall have been extended or renewed in violation of the terms hereof and no coupon which shall have been transferred or pledged separate and apart from the bond to which it pertains, unless it be accompanied by such bond, shall be entitled in case of default under this Indenture to any benefit hereof, except after the prior payment in full of the principal of all the bonds then outstanding and of all coupons, the payment of which shall not have been so extended or renewed, and which shall not have been so transferred or pledged."

The bonds which fell due February 1, 1932, were paid. The debtors were unable to pay those which fell due February 1, 1933. An agreement was entered into between the debtors and the trustee providing for an extension of the maturity of those bonds until February 1, 1934. This extension agreement required the consent of the holders of bonds due February 1, 1933, and February 1, 1934. The agreement stated that it did not "alter, modify or amend said [trust] indenture in anywise except as to the time of payment of said bonds so extended, but said indenture and this agreement shall be construed as one entire agreement between" the parties thereto "and the several and respective holders and owners of said outstanding bonds and/or interest coupons". All bondholders, including the appellants, consented to the extension agreement, except the owners of $3,000 of the bonds due February 1, 1933.

On February 1, 1934, all outstanding bonds fell due. The debtors did not pay them, but requested the bondholders to grant an extension. A supplemental extension agreement, to which the debtors, the trustee and all bondholders who consented thereto were parties, was executed on September 15, 1934, but dated February 1, 1934. It provided that the bonds of consenting bondholders should mature on February 1, 1939. This agreement, unlike the previous extension agreement, undertook to modify the provisions of the trust indenture securing the bonds. It required the corporation to pay over to the trustee 50% of all collections made from pledged securities, and to substitute for the other 50% of the collections securities of the same character as the pledged securities. It also provided that funds deposited with the trustee should be used for the purchase "and/or redemption of extended bonds", at the best prices obtainable. It also provided that the trustee was authorized and directed to release to the corporation 50% of the pledged securities upon delivery and substitution therefor of notes of the Champion Shoe Machinery Company for $441,000 secured by a first mortgage deed of trust executed by that company upon the real estate and personal property constituting its plant.

Article II of the supplemental extension agreement provided that the bonds extended should remain a first and prior lien on the trust estate for the sole use and benefit of the holders of the extended bonds and of the holders of the bonds who did not deliver their bonds for extension; and that, in the event the holder or own-

er of any bond not extended should seek to establish through legal proceedings any preference, priority or distinction over extended bonds under Section 2 of Article IV or Section 1 of Article VI of the original indenture, then the extension agreement should become null and void, it being the intent of the parties that the extended bonds should not be subordinated in any manner to bonds not extended. Section 3 of Article III of the supplemental extension agreement expressed the same intent.

On October 12, 1934, the St. Louis Union Trust Company notified the Mercantile Commerce Bank and Trust Company as follows:

"We are the owner and holder in our various accounts of a total of $5,500 Champion Acceptance Corporation Collateral Trust 6% bonds due February 1, 1934, being bonds Nos. M657, M396, M844, D399, M884, M886.

"We understand your institution, as Trustee under this issue, are arranging to release some of the collateral pledged as security to these notes and receive in lieu thereof a mortgage of approximately $441,000 on the land, buildings, and equipment of the Champion Shoe Machinery Corporation.

"This is to advise you that our counsel contend that inasmuch as 95% of the holders of Collateral Trust bonds have assented to the release of the collateral behind this issue and the substitution of this mortgage, the entire collateral so held by you as Trustee belong to the holders of Collateral Trust notes who have not assented to this plan. In the event any of this collateral is released by your institution as Trustee, we intend to hold you accountable for any loss which we may sustain by reason of the release of any of the collateral held by you as Trustee."

The supplemental extension agreement was carried out. Fifty per cent of the pledged assets were released by the trustee upon the substitution of the notes of the Champion Shoe Machinery Company secured by a mortgage upon its plant. The holders of the $3,000 of bonds who had not consented to the extension agreement of February 1, 1933, did not consent to the supplemental extension agreement of 1934. The holders of $10,500 of bonds originally due February 1, 1933 (including appellants), who had consented to the first extension agreement, did not consent to the supplemental extension agreement. All other bondholders consented to that agreement. The appellants have received no interest on their bonds since August 1, 1933, although consenting bondholders received interest through August 1, 1936. The appellants could have received interest to the same date by consenting to the supplemental agreement. Of the $1,400,000 of bonds originally issued, about $650,000 are now outstanding.

In the reorganization proceeding all bondholders were placed in one class, and in the plan of reorganization approved by the court they were placed on a parity. The appellants insist that in classifying creditors the court should have divided the bondholders into three classes: (1) those who did not consent to any extension; (2) those who consented to the extension of 1933 but did not consent to that of 1934; and (3) those who consented to both extensions. The appellants also insist that the plan of reorganization adopted was unfair and inequitable in that it failed to recognize or give effect to the superior rights which they possessed.

Section 2 of Article IV and Section 1 of Article VI of the trust indenture provided that bondholders whose bonds were not extended should be entitled to the prior payment of their bonds. The same sections of the trust indenture as it was modified by the extension agreement of 1933 gave to appellants and other bondholders in their situation the right to prior payment of their bonds as against bondholders who consented to the second extension. The purpose and intent of the first extension agreement was not to disturb the rights of bondholders under the trust indenture except with respect to the maturity of bonds falling due February 1, 1933. It is true that that agreement extended the time for payment of those bonds "beyond the time originally fixed for maturity". It did not, however, extend the original maturity date of the bonds due in 1934. The parties to the extension agreement of 1933 were not precluded from contracting that, as between themselves, the trust indenture should be changed only with respect to the date of maturity of the bonds due in 1933. A ruling that by consenting to such a change the appellants waived the rights which they now assert, would be contrary to the express terms of the extension agreement

of 1933. The appellants did not voluntarily relinquish any rights secured to them by the trust indenture except the right to payment of their bonds on February 1, 1933. They are not estopped. They have misled no one, and their position has at all times been entirely consistent with their present claims. By contending in the reorganization proceedings that the rights of other bondholders were inferior to their rights under Section 2 of Article IV and Section 1 of Article VI of the trust indenture, they did not bring about a nullification of the extension agreement of 1934. That agreement had then become completely executed. The appellants were not parties to it and were not bound by it. It was the actual extension of the time of payment of the bonds falling due in 1934 which subordinated the rights of the holders of those bonds to the rights of the bondholders whose bonds were not so extended.

 It can be argued that, since all bonds were secured by the same pledged assets under the same trust indenture, the court below had the discretion to place all of the bondholders in a single class for purposes of the reorganization proceeding, and that the appellants' only just complaint is against the plan adopted. See and compare, In re Palisades-on-the-Desplaines, 7 Cir., 89 F.2d 214, 217; J. P. Morgan & Co. v. Missouri Pac. R. Co., 8 Cir., 85 F.2d 351, 352. We think that the appellants' rights were sufficiently distinct from those of other bondholders to entitle the appellants and those who were similarly situated to a separate classification. See Gerdes, Corporate Reorganization, 1936, Vol. 2, §§ 1045-1046, pp. 1681-1682; Finletter, Principles of Corporate Reorganization, pp. 423-424. Whether the appellants be regarded as entitled to payment before other bondholders may have recourse to the pledged assets, or as having a lien on the pledged assets superior to that of other bondholders, we think is not important. The rights of the bondholders who consented to the last extension were, by the terms of the trust indenture, subordinated to the rights of those who never consented to any extension and to the rights of those who consented only to the first extension. Agreements of creditors to subordinate their indebtedness to that of other creditors will be given effect in bankruptcy proceedings. Bird & Sons Sales Corporation v. Tobin,

8 Cir., 78 F.2d 371, 373, 100 A.L.R. 654, and cases cited.

The record shows that the bonds of the appellants and of others in their situation and the bonds of those who never consented to any extension were fully secured by the assets pledged; that other bonds evidently were not; that under the plan of reorganization, which made no distinction between bondholders, the appellants and the others whose rights are superior to those of other bondholders will not receive the worth of their bonds. The plan which compels them to surrender, without adequate consideration and for the benefit of other bondholders, the superior rights which they acquired is inequitable and unfair. See and compare, In re Nine North Church Street, Inc., 2 Cir., 82 F.2d 186; Sophian v. Congress Realty Co., 8 Cir., 98 F.2d 499; Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. ——.

The order appealed from is reversed and the case remanded for further proceedings not inconsistent with this opinion.