## WESTERN MESA OIL CORPORATION et al. v. EDLOU CO. et al.

### No. 10594.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1944.

Dissenting Opinion July 19, 1944.

Rehearing Denied Aug. 8, 1944.

844

Raphael Dechter· and Harry A. Pines, both of Los Angeles, Cal., for appellants.

H. L. Welch, of Los Angeles, Cal., for appellees (McCray et al.

Martin & Bowker of Tujunga, Cal., for appellees No. 2 and No. 4 Wells).

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Appellants are Western Mesa Oil Corporation, a corporation, an unsecured creditor claiming in this proceeding brought by Sovereign Oil Corporation, hereinafter called the debtor, under Chapter XI of the Bankruptcy Act of 1898, as amended by Chandler Act of 1938, 11 U.S.C.A. § 701 et seq., and El Segundo Oil Company, a corporation, successor to the debtor under a plan of arrangement made in the bankruptcy proceeding. They appeal from an ·order of the district court sustaining an order of the referee that under a provision of the plan of arrangement appellees, landowner lessors of oil lands to the debtor, are entitled to a priority payment of their unsecured claims for unpaid royalties due prior to the filing of the petition. It is agreed that the terms of the leases are to be construed under the law of California.

The debtor filed its petition on June 19, 1942. It is admitted that there were due royalties on three leases of oil lands to the debtor. The facts differ regarding the non-payment of royalties on one lease on Sovereign Well No. 1, and on two other leases on Sovereign Wells Nos. 2 and 4. Each class is here separately considered. Claims were filed by the lessors for the amounts due as unsecured claims. The debtor proposed a plan of arrangement and to secure the consent of these unsecured claimants the plan included the following provision:

"Landowners' royalties which carry with them the right or [of] forfeiture of the oil and gas leases under which such royalties are payable and where such right of forfeiture has not, prior to the filing of the petition in bankruptcy, been waived either in writing or by the conduct of the parties, will be paid in full in the same manner as priority claims. Where, how-

MATHEWS, Circuit Judge, dissenting.

ever, the facts disclose that prior to the filing of the proceedings hereunder by the debtor, the landowners, by writing or by their conduct, have legally waived the right of forfeiture as to any of the unpaid royalties, the same will be treated the same as those in the class of unsecured creditors. Should any controversy arise as to the proper status of such claims of holders of landowners' royalties, the same shall be determined by the above entitled Court in the above entitled proceeding upon hearing after notice."

■ Appellants' contention that such an arrangement is invalid because giving a priority to one class of unsecured claims over another is without merit. It is authorized by the following provisions of Chapter XI of the Bankruptcy Act, dealing with unsecured claims:

"Sec. 306. For the purposes of this chapter, unless inconsistent with the context—

"(1) 'arrangement' shall mean any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his *unsecured* debts *upon any terms.*" (Emphasis supplied.)

"Sec. 351. For the purposes of the arrangement and its acceptance, the court may fix the division of creditors into classes and, in the event of controversy, the court shall after hearing upon notice summarily determine such controversy."

"Sec. 356. An arrangement within the meaning of this chapter shall include provisions modifying or altering the rights of unsecured creditors generally or of some classes of them, upon any terms or for any consideration."

"Sec. 357. An arrangement within the meaning of this chapter may include—

"(1) provisions for treatment of unsecured debts on a parity one with the other, or for a division of such debts into classes and the treatment thereof in different ways or upon different terms * * *."

Acting under the last sentence of the quoted provision of the plan, appellants petitioned the court for a determination of the claim of the appellees that their claims should be paid in full before the claims of other unsecured creditors.

On the hearing of the petition as to both classes of leases, the referee held for the claimants under them and the district court sustained the referee.

The leases are not before us. However, counsel at the hearing before the referee and in their briefs here, agree that both classes of leases contain forfeiture provisions on the non-payment of the monthly royalties, giving the lessor the right to their forfeiture by a ninety-day written notice followed by non-payment during the ninety days. No such notice was given.

■ Appellants claim that the words "right of forfeiture" in the phrase "Landowners' royalties which carry with them the right of forfeiture of the oil and gas leases" mean an acquired forfeiture of the leases—that is, that the notice has been given and three months had expired during which the royalty moneys have not been paid. We do not agree with this construction of the phrase. We consider the words "Landowners' royalties" to mean the "landowners' royalty agreements" not the moneys paid under the agreements, and that the right of forfeiture was the right to forfeit by giving the notice and not the forfeiture acquired after the exercise of the right. It is only the agreements which could "carry" the provisions respecting the right of forfeiture.

■ A receiver of the debtor was appointed who paid appellees the royalties on all three leases for the production after the filing of the petition. Appellants contend that the acceptance of these later royalties by appellees constituted a waiver of the rights of forfeiture within the provision of the plan above set forth. We agree with the district court that such acceptances did not constitute the waivers there considered. The plan itself (proposed by the debtor) is the answer to such a contention. Therein it is provided that if there was no waiver of the right of forfeiture prior to the filing of the bankruptcy petition, then the landowners' royalties shall be paid in full, in the same manner as priority claims. If there was such waiver prior to the filing of the bankruptcy proceeding, then they were to be "treated the same as those in the class of unsecured creditors." The plan further provides (in the next sentence) that if any controversy arises as to the "proper status of such claims" then the same shall be determined by the bankruptcy court. This clearly refers to a determination based upon whether or not there was a waiver before the bankruptcy proceeding.

*Sovereign Oil lease of Well No. 1.* There had been a suit pending involving the

various landowners of Well No. 1 in the Superior Court of Los Angeles County, for the declaration of rights and determination of the share of the total landowners' royalties payable to the owners of each parcel of land embraced within the lease covering Well No. 1. The litigation as to Well No. 1 was finally and completely determined by a compromise agreement between the landowners about June 9, 1942. Landowners of Well No. 1 erroneously believed that the debtor had been impounding all the funds necessary to pay the royalties which accrued during the pendency of the state court proceeding. Upon the settlement of the state court action about June 9, 1942, immediate demand was made by the landowners of Well No. 1 upon the debtor for all past due royalties.

On or about June 17, 1942, cashiers' checks were tendered to the landowners and were accepted by them on account of past due royalties that paid the royalties on Well No. 1 up to March 1, 1942, but with the owners' demand for the payment of the balance. The debtor advised them it did not have the money to pay the balance then but would pay it out of money due the debtor on or about June 20th. On June 19th the debtor prevented itself from fulfilling its promise by filing its petition in bankruptcy.

■ Appellants claim that the acceptance of the checks for a part of all the royalties then due and demanded was a waiver of the right of forfeiture for the unpaid balance. We do not agree. The demand for all the royalties is a first step in creating a forfeiture. J. B. Hill Co. v. Pinque, 179 Cal. 759, 761, 178 P. 952, 3 A.L.R. 669. That demand was not satisfied and the acceptance of the part payment accompanied by the assurances to pay the balance, so voluntarily broken, does not constitute a waiver of the right of forfeiture of the breach of the agreement to pay the balance. Apart from the absence of any intent to waive, the California law with regard to waiver of forfeiture for breaches of agreements to pay rent, as distinguished from other forfeiting breaches, is that the acceptance of rent for a certain rental period is a waiver of a forfeiting breach only of rentals prior to the period of the accepted rents. Silva v. Campbell, 84 Cal. 420, 422, 24 P. 316. The referee and the district court properly held that the landowners of Well No. 1 had an existing right of forfeiture of their lease to the debtor on June 19, 1942, when it filed its petition, and that their claims for royalties unpaid prior to June 19th should be paid in full.

*Leases on Sovereign Wells Nos. 2 and 4.* It is agreed that the debtor paid on March 20, 1942, the royalties due January 1, 1942, and nothing thereafter. Appellants contend that this acceptance of the January 1, 1942, royalty constitutes a waiver of the right of forfeiture for all the payments due after January 1st. Upon what has been held with regard to the claim of waiver of the right to forfeiture on Lease No. 1, we hold there is no merit in appellants' contention concerning Leases Nos. 2 and 4.

The judgment appealed from is affirmed.

MATHEWS, Circuit Judge (dissenting).

This appeal is from a judgment which purported to affirm two orders said to have been made by a referee in bankruptcy on January 20, 1943, in a proceeding by Sovereign Oil Corporation, hereafter called the debtor, under Chapter XI, §§ 301–399, of the Bankruptcy Act, 11 U.S.C.A. §§ 701–799.

There were no such orders. The debtor and V. W. Erickson, receiver of the debtor's property, petitioned for an order determining the rights of appellees [1] under oil and gas leases under which four wells (Nos. 1, 2, 3 and 4) were operated by the debtor.[2] The referee heard the petition and on January 20, 1943, stated (1) his findings and conclusions regarding the lease under which Well No. 1 was operated [3] and (2) his findings and conclusions regarding the leases under which Well No. 2 and Well No. 4 were operated.[4] But he made no order.

On January 25, 1943, appellants [5] filed

---

[1] Edlou Company, A. A. McCray, William H. Ramsaur, F. R. C. Fenton and many others.

[2] The leases were made by appellees and/or their predecessors in title to the debtor's predecessors in title.

[3] This was known as El Segundo Block 51 Community Oil and Gas Lease.

[4] The record discloses no findings or conclusions regarding the lease under which Well No. 3 was operated.

[5] Western Mesa Oil Corporation and El Segundo Oil Company. Western Mesa Oil Corporation was a creditor of the debtor. El Segundo Oil Company was a corporation formed to acquire the debtor's property pursuant to an arrangement proposed by the debtor and confirmed by the court.

(1) a petition for review of an "order" a copy of which was attached to that petition as Exhibit A and (2) a petition for review of an "order" a copy of which was attached to that petition as Exhibit A. The attached exhibits were (1) a copy of the referee's findings and conclusions regarding the lease under which Well No. 1 was operated and (2) a copy of the referee's findings and conclusions regarding the leases under which Well No. 2 and Well No. 4 were operated. Thus, instead of being, as they purported to be, petitions for review of orders, these were petitions for review of findings and conclusions only.

No such review is provided for by law. Section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, provides for review of orders of referees, but no provision is made, there or elsewhere, for review of a referee's findings and conclusions, unaccompanied by an order.

The judgment should be reversed, and the case should be remanded with directions to dismiss the petitions for review.